IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:14CR347 |
| vs. | |
| LELAND BRETT SAUL, | FINDINGS AND RECOMMENDATION |
| Defendant. | |

This matter is before the court on the defendant's, Leland Brett Saul (Saul), Motion to Dismiss (Filing No. 21). Saul is charged in the Indictment with failing to register as a sex offender in the State of Nebraska after having traveled in interstate commerce as required by the Sex Offender Registration and Notification Act (SORNA) in violation of 18 U.S.C. § 2250(a). **See** Filing No. 13 - Indictment. Saul moves to dismiss the Indictment because Congress lacked the authority under Article I of the United States Constitution to impose offender registration requirements in Saul's circumstances and further because 18 U.S.C. § 2250 violates the *Ex Post Facto* Clause of the United States Constitution. **See** Filing No. 21 - Motion.

The court held a hearing on the motion on December 3, 2014. Saul was present with his counsel, Assistant Federal Public Defender Richard H. McWilliams. The United States was represented by Assistant United States Attorney Michael P. Norris. The court received into evidence: Ex. 1 - Indictment in CR. 94-40062; Ex. 2 - Judgment in CR. 94-40062; and Ex. 3 - Order in CR. 94-40062. The court also accepted counsels' fact stipulations. **See** Filing No. 29 - p. 3-5. A transcript (TR.) of the hearing was prepared and filed on December 11, 2014. **See** Filing No. 29. There was no post-hearing briefing.

## FINDINGS OF FACT

On November 30, 1994, Saul was indicted in the District of South Dakota for aggravated sexual abuse and abusive sexual contact which occurred on March 1 and May 30, 1994. **See** TR. 3; Ex. 1 - Indictment. Saul pled guilty to one of the four alleged counts on January 27, 1995, was convicted on May 8, 1995, and sentenced to sixty

months imprisonment to be followed by three years of supervised release. **See** TR. 3-4; Ex. 2 - Judgment. On June 10, 1999, a petition to revoke Saul's supervised release was filed. **See** TR. 4. On August 2, 1999, Saul's supervised release was revoked and Saul was ordered to serve twenty-four months in prison with no supervised release to follow. *Id.* Saul was released from federal custody on March 2, 2001. *Id.* On August 31, 2011, Saul filed a "Motion for Reconsideration of Judgement [sic] for Lifetime Sex offender Registry" in the District of South Dakota seeking to strike the sentence requirement of lifetime registration on the sex offender registry. **See** Ex. 3. The district court, noting it would "not speculate as to the application of any particular State's sex offender registration requirements," denied Saul's request as being untimely filed. *Id.* On October 22, 2014, Saul was indicted in the District of Nebraska for violating 18 U.S.C. § 2250(a). **See** Filing No. 13 - Indictment.

## ANALYSIS

Saul contends the court should dismiss the Indictment for two reasons: 1) Congress lacked the authority under the Necessary and Proper Clause of Article I of the United States Constitution to impose registration requirements upon Saul and 2) 18 U.S.C. § 2250 violates the *Ex Post Facto* Clause. **See** Filing No. 21 - Motion; Filing No. 22 - Brief.

On March 4, 1994, South Dakota enacted registration requirements for convicted adult sex offenders. **See** CRIMES—REGISTRATION OF CONVICTED ADULT SEX OFFENDERS, 1994 South Dakota Laws Ch. 174 (H.B. 1349) (the Act). Section 1 of the Act provides an initial list of offenses considered sex crimes at the time the sex offender registration was enacted. *Id.* Section 2 of the Act provided, in pertinent part,

> Any person who has been convicted on or after July 1, 1994, whether upon a verdict or plea of guilty or a plea of nolo contendere, or received a suspended sentence for a sex crime or an attempt to commit a sex crime or who enters this state after July 1, 1994, and has been convicted or received a suspended sentence for a sex crime or attempted sex crime which, if committed or attempted in this state, would be a sex crime or an attempt to commit a sex crime in this state, shall, within ten days of coming into any county to reside or temporarily domicile for more than thirty days,

2

> register with the chief of police of the municipality in which the person resides, or, if no chief of police exists, then with the sheriff of the county in which the person resides.

*Id.* Section 6 of the Act provided a continuing duty for an individual subject to registering to "annually register with the local law enforcement agency having jurisdiction of the person's residence verifying the information given pursuant to section 3 of this Act." *Id.*; **see also** TR. 4, Filing No. 24 - Response p. 5.

On September 13, 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (Wetterling Act), Pub. L. No. 103-322, Title XVII, §§ 170101-170303, 108 Stat. 1796, 2038-45 (1994). The Wetterling Act encouraged states, as a condition of receiving federal funding, to adopt sex-offender registration laws meeting certain minimum standards. **See generally**, 42 U.S.C. § 14071. The Wetterling Act further "imposed federal penalties upon federal sex offenders who failed to register in the States in which they lived, worked, and studied." *United States v. Kebodeaux*, 133 S. Ct. 2496, 2501 (2013) (**citing** 42 U.S.C. §§ 14072(i)(3)-(4)).[1] Relevant here, § 14072(i)(2) provided a person who is "required to register under a sexual offender registration program in the person's State of residence and knowingly fails to register in any other State in which the person is employed, carries on a vocation, or is a student," is subject to specified penalties. 42 U.S.C. 14072(i)(2). Additionally, § 14072(i)(3) imposed a penalty on a person who is "described in section 4042(c)(4) of title 18 [specifying various sex offenses], and knowingly fails to register in any State in which the person resides, is employed, carries on a vocation, or is a student following release from prison or sentencing to probation." 42 U.S.C. 14072(i)(3).

SORNA, enacted in July of 2006, makes it a crime for a person (1) "who is required to register under the [Act]" and (2) who "travels in interstate . . . commerce" to (3) knowingly "fail[ ] to register or update a registration." 18 U.S.C. § 2250(a). A sex offender is required to register in each jurisdiction he resides, works, or studies. **See** 42 U.S.C. § 16913(a).

---

[1] 42 U.S.C. §§ 14072 was amended in 1998 to add §§ 14072(i)(3) and (4).

3

**A.      Registration Requirement**

Saul argues Congress lacked the authority under Article I of the United States Constitution to impose registration requirements upon individuals whose qualifying offense and federal conviction predate the enactment of SORNA, who were released from federal custody before SORNA was enacted, and who, at the time of the conduct alleged in the indictment, were not in any special relationship with the federal government.  **See** Filing No. 22 - Brief p. 2-6.  Saul contends ***United States v. Kebodeaux***, 133 S. Ct. 2496 (2013) and ***United States v. Coppock***, 765 F.3d 921 (8th Cir. 2014) have left unclear which events are material in determining when SORNA's registration requirements are imposed on a defendant.  ***Id.***

The Supreme Court addressed the application of the Wetterling Act and SORNA to a defendant in ***Kebodeaux***.  **See** ***Kebodeaux***, 133 S. Ct. at 2500.  The defendant, Kebodeaux, was convicted by a special court-martial of a federal sex offense in 1999.  ***Id.***  After serving his three-month sentence, Kebodeaux was required to register as a sex offender under the Wetterling Act.  ***Id.***  When Kebodeaux failed to update his registration status, he was charged and convicted with violating SORNA.  ***Id.***  On appeal, the Fifth Circuit initially upheld the district court's conviction; however, upon a rehearing en banc, the Fifth Circuit reversed, finding that "by the time Congress enacted SORNA, Kebodeaux had 'fully served' his sex-offense sentence; he was 'no longer in federal custody, in the military, under any sort of supervised release or parole, or in any other special relationship with the federal government.'"  ***Id.***

The Supreme Court first determined Kebodeaux's release was not "unconditional."  ***Id.*** at 2501 (defining "unconditional" to mean, after the defendant's release, "he was not in 'any . . . special relationship with the federal government.'").  The Court explained Kebodeaux was in a "special relationship with the federal government" because he was subject to the preexisting registration requirements of the Wetterling Act of 1994 "as of the time of Kebodeaux's offense, conviction and release from federal custody[.]"  ***Id.*** at 2502.  The Court held although SORNA was enacted after Kebodeaux was released from federal custody, because the Wetterling Act imposed federal registration requirements similar to those Congress later enacted in SORNA, "the

4

Necessary and Proper Clause authorized Congress to modify the requirement" already applicable to Kebodeaux through the Wetterling Act.  *Id.*

In *Coppock*, the Eighth Circuit examined, in light of *Kebodeaux*, the constitutionality of SORNA as applied to a defendant whose qualifying offense and conviction occurred before the Wetterling Act.  **See** *Coppock*, 765 F.3d at 922.  The Eighth Circuit reasoned "SORNA cannot be justified as a necessary and proper modification of federal registration requirements already in place," as in *Kebodeaux*, because Coppock's sex offense and conviction occurred prior to the enactment of the Wetterling Act.  *Id.* at 924.  However, the Eighth Circuit concluded a necessary federal nexus existed to give Congress the authority to regulate sex offenders like Coppock because Coppock was not unconditionally released and was on federal parole when Congress enacted the Wetterling Act and SORNA.  *Id.* at 925.  The Eighth Circuit noted though "[o]ur decision here applies only to a sex offender who—at the time the registration requirements came into effect—was under federal parole supervision based on a conviction under federal law, and thus remained in a special relationship with the federal government."  *Id.* (internal quotation marks omitted).

Similar to *Kebodeaux* and *Coppock*, wherein the defendants maintained a "special relationship with the federal government," Saul also maintained such a relationship.  Saul was not unconditionally released at the time of the Wetterling Act's enactment.  Congress enacted the Wetterling Act on September 13, 1994, at which time Saul was under prosecution in South Dakota for aggravated sexual abuse and abusive sexual contact.  **See** Ex. 1.  Saul's January 27, 1995, guilty plea and May 8, 1995, conviction occurred *after* the enactment of the Wetterling Act.  **See** Ex. 2; 42 U.S.C. 14071.  By virtue of Saul's ongoing prosecution, Saul too maintained a "special relationship with the federal government" at the time Congress enacted the Wetterling Act.  Additionally, Saul maintained a "special relationship with the federal government" until March 2, 2001, when Saul was released from federal custody, which was after the enactment and subsequent amendments of 42 U.S.C. §§ 14071 and 14072.  This relationship subjected Saul to at least one of the § 14072(i) registration requirements. Specifically, Saul was subject to § 14072(i)(3), which imposed federal criminal penalties upon any "person who is . . . described in section 4042(c)(4) of title 18, and knowingly

5

fails to register in any State in which the person resides." **See** 42 U.S.C. § 14072(i)(3). Section 4042(c)(4) provides, in part, "[a] person is described in this paragraph if the person was convicted of any of the following offenses . . . : (B) An offense under chapter 109A." **See** 18 U.S.C. § 4042(c)(4)(B). Chapter 109A includes the offense for which Saul was charged and convicted. **See** 18 U.S.C § 2244 - Abusive Sexual Contact.

Saul was also subject to § 14072(i)(2), which imposed penalties on "[a] person who is required to register under a sexual offender registration program in the person's State of residence and knowingly fails to register in any other State in which the person is employed, carries on a vocation, or is a student." Saul was convicted on May 8, 1995, and according to South Dakota law, Saul was required to register as an adult sex offender. South Dakota's registration requirements applied to "[a]ny person who has been convicted on or after July 1, 1994." **See** CRIMES—REGISTRATION OF CONVICTED ADULT SEX OFFENDERS, 1994 South Dakota Laws Ch. 174 (H.B. 1349). As a result, Saul was required to comply with § 14072(i)(2) because he was subject to South Dakota's ongoing registration requirement. **See *United States v. Elk Shoulder***, 738 F.3d 948 (9th Cir. 2013) (finding the defendant similarly subject to the Wetterling Act's registration requirements due, in part, to the defendant's registration requirements under state law).

Saul's argument the court can infer from ***Kebodeaux*** that for the Wetterling Act to apply to him, the Wetterling Act had to have been enacted prior to the date of his underlying offense is unpersuasive. Saul argues ***Kebodeaux*** did not specifically state what event or events, the offense, conviction, or release, must have predated the passage of the Wetterling Act for the Wetterling Act to be applicable to a defendant. The Supreme Court in ***Kebodeaux*** does not directly address what event, the offense, conviction, or release, must occur prior to enactment of the Wetterling Act. Nevertheless, ***Coppock*** illustrates a necessary federal nexus may still exist to provide Congress authority to regulate a defendant like Saul even if an offense occurs prior to the Wetterling Act's enactment. Further, the court will not limit ***Kebodeaux*** because of a perceived ambiguity in the absence of such limiting language or authority. Consequently, as reasoned in ***Kebodeaux*** and stated in ***Coppock*** "'the Necessary and

6

Proper Clause authorized Congress to modify the requirement' already applicable to the offender through the Wetterling Act." *Kebodeaux*, 133 S. Ct. at 2502; *Coppock*, 765 F.3d at 924. As Saul was subject to the Wetterling Act, *Kebodeaux* and *Coppock* compel the conclusion SORNA can be constitutionally applied to Saul.

**B.  Retroactivity**

Saul contends the Indictment must be dismissed because § 2250(a) violates the *Ex Post Facto* Clause and principles against retroactive application of the law. **See** Filing No. 22 - Brief p. 6-9. Saul's arguments are foreclosed by Eighth Circuit precedent. **See** *Coppock*, 765 F.3d at 925 (concluding defendant's argument "Congress unconstitutionally delegated legislative power by authorizing the Attorney General to determine SORNA's retroactive effect . . . and that his conviction under 18 U.S.C. § 2250(a) amounts to e*x post facto* punishment for his pre-SORNA sex offense, are foreclosed by precedent") (**citing** *United States v. Kuehl*, 706 F.3d 917, 920 (8th Cir. 2013); *United States v. Voice*, 622 F.3d 870, 879 (8th Cir. 2010)); **see also** *United States v. Waddle*, 612 F.3d 1027, 1029 (8th Cir. 2010) (holding SORNA does not violate the *Ex Post Facto* Clause and noting the Eighth Circuit's opinion is consistent with the Supreme Court's opinion in *Carr v. United States*, 560 U.S. 438 (2010)). Accordingly,

**IT IS RECOMMENDED TO SENIOR JUDGE LYLE E. STROM that:**

Saul's Motion to Dismiss (Filing No. 21) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 31st day of December, 2014.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge